## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COLLEGIUM PHARMACEUTICAL, INC.,    )
                                               )

                   Plaintiff,    )    C.A. No.
v.    )

                                               )

TEVA PHARMACEUTICALS USA, INC.,    )
                                               )

                 Defendant.    )

## COMPLAINT

Plaintiff Collegium Pharmaceutical, Inc. ("Collegium"), for its Complaint herein, avers as follows.

The present complaint asserts counts that relate to Teva Pharmaceuticals USA Inc.'s ("Teva's") submission of Abbreviated New Drug Application ("ANDA") No. 209431 to the U.S. Food, & Drug Administration ("FDA"), under § 505(j)(2)(B) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)(2)(B)), seeking approval to engage in the commercial manufacture, use, sale, offer for sale or importation of Oxycodone Extended-Release Capsules, CII,, 9 mg, 13.5 mg, 18 mg, 27 mg, and 36 mg ("the Teva ANDA Products") before the expiration of, Collegium's U.S. Patents Nos. 9,968,598 ("the '598 Patent") and 10,004,729 ("the '729 Patent") (together, "the Asserted Patents").

The present complaint seeks relief relating to Teva's submission of ANDA No. 209431 seeking approval to engage in the commercial manufacture, use, sale, offer for sale, or importation of the Teva ANDA Products prior to the expiration of the Asserted Patents

## NATURE OF THE ACTION

This is an action for relief from patent infringement, arising under the patent laws of Title 35, United States Code. Collegium seeks relief from infringement of the Asserted Patents, which generally relate to (1) improved abuse-deterrent and tamper-resistant components or formulations

RLF1 20378070v.1

of abuse-prone substances, including, *inter alia*, oxycodone and oxycodone salts; (2) methods of treating pain using these formulations; (3) abuse-deterrent formulations of abuse-prone substances, including, *inter alia*, oxycodone and oxycodone salts, with improved stability; and (4) and methods of making the same. Teva has infringed the Asserted Patents under 35 U.S.C. § 271(e)(2)(A) by filing ANDA No. 209431 on the Teva ANDA Products and has expressed its intent to conduct activities that will infringe under 35 U.S.C. §§ 271(a), (b), (c) and (g) by actual marketing of the Teva ANDA Products.

## THE PARTIES

1.      Collegium is a corporation organized and existing under the laws of the Commonwealth of Virginia, having its principal place of business at 100 Technology Center Drive, Suite 300, Stoughton, MA 02072. Collegium is the owner of the Patents. Collegium is also the holder of NDA No. 208090 for XTAMPZA® ER (oxycodone) extended-release capsules, CII, for oral use, for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate, and is involved in the sale of XTAMPZA® ER in the United States.

2.      On information and belief, Defendant Teva Pharmaceuticals USA, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 1090 Horsham Road, North Wales, Pennsylvania, and having designated its registered agent for the State of Delaware as Corporate Creations Network Inc., 3411 Silverside Road, #104 Rodney Building, Wilmington, Delaware.

3.      On information and belief, Teva is in the business of, among other things, manufacturing, marketing, distributing, offering for sale, and selling generic drug products. As a part of this business, on information and belief, Teva files ANDAs with the FDA seeking approval

- 2 -

to engage in the commercial manufacture, use, offer for sale, sale and/or importation of generic versions of drug products that infringe United States patents. On information and belief, as part of these ANDAs, Teva USA, files Paragraph IV Certifications to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of generic drug products prior to the expiration of United States patents that cover such products.

4.    On information and belief, following any FDA approval of ANDA No. 209431, Teva will market, distribute, offer for sale and sell Teva's ANDA Product throughout the United States and within Delaware.

5.    On information and belief, following any FDA approval of ANDA No. 209431, Teva knows and intends that its ANDA Product will be marketed, used, distributed, offered for sale and sold in the United States and within Delaware.

## JURISDICTION AND VENUE

6.    This action arises under the patent laws of the United States, including 35 U.S.C. § 271.

7.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.    This Court has personal jurisdiction over Teva, and venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b) and (c) and § 1400(b), because Teva is incorporated in this Judicial District.

9.    Teva is in the business of preparing pharmaceuticals that it distributes in the State of Delaware and throughout the United States.

10.    Upon information and belief, if ANDA No. 209431 is approved, the Teva ANDA Products will, among other things, be marketed and distributed in Delaware, and/or

- 3 -

prescribed by physicians practicing and dispensed by pharmacies located within Delaware, all of which have a substantial effect on Delaware.

11.     Pending before this Court is related case, Civil Action No. 18-300-LPS, in which Collegium has accused Teva of infringing other U.S. patents, including related U.S. Patent No. 9,737,530, which is a parent patent to the '598 Patent and related U.S. Patent Nos. 8,840,928 and 9,682,075, which are parent patents to the '729 Patent. Civil Action No. 18-300-LPS also involves Teva's ANDA No. 209431 and the Teva ANDA Products.

12.     In Civil Action No. 18-300-LPS, Teva did not contest that this Court has personal jurisdiction over Teva and that venue is proper in this Judicial District. Teva also availed itself of the Court's jurisdiction by submitting counterclaims.

## THE ASSERTED PATENTS

13.     The FDA *Approved Drug Products with Therapeutic Equivalence Evaluations* ("*Orange Book*") identifies drug products that have been approved by the FDA under the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 301 et seq.).  The *Orange Book* also provides a listing of certain patents that cover a given drug product or the use thereof.

14.     Collegium is the lawful owner of all right, title and interest in the '598 Patent, entitled *Process of Making Stable Abuse-Deterrent Oral Formulations,* granted May 15, 2018, from application S/N 15/649,024 (filed July 13, 2017), which is a continuation of application S/N 15/255,859 (filed Sep. 2, 2016), with priority to U.S. Provisional Application S/N 62/353,839 (filed June 23, 2016). The inventors of the '598 Patent are Said Saim, Alison B. Fleming; and Ravi K. Varanasi. Collegium is the assignee of the '598 Patent, which is currently scheduled to expire on September 2, 2036. A copy of the '598 Patent is attached hereto as Exhibit A.

15.     Collegium is the lawful owner of all right, title and interest in the '729 Patent, entitled *Tamper-Resistant Pharmaceutical Compositions of Opioids and Other Drugs,*

- 4 -

granted June 26, 2018, from application S/N 15/606,112 (filed May 26, 2017), which is a continuation of application S/N 14/320,086 (filed Jun. 30, 2014), which is a continuation of application S/N 12/965,572 (filed Dec. 10, 2010) now U.S. Pat. No. 8,840,928, with priority to U.S. Provisional Application S/N 61/285,231 (filed Dec. 10, 2009). The inventors of the '729 Patent are Roman V. Rariy, Alison Fleming, Jane C. Hirsh, Said Saim, and Ravi K. Varanasi. Collegium is the assignee of the '729 Patent, which is currently scheduled to expire on December 10, 2030. A copy of the '729 Patent is attached hereto as Exhibit B.

## DRUG-ABUSE-DETERRENT TECHNOLOGY

16.     Oxycodone, morphine, and other opioid analgesics are therapeutically useful and effective medications, e.g., as pain relievers, when administered orally. Unfortunately, they also pose a severe threat for willful abuse due to their ability to alter mood and/or cause a sense of euphoria. Conventional (i.e., non-abuse deterrent) available sustained release formulations of such drugs, which contain a relatively large amount of drug intended to be released from the formulation over an extended period of time, are particularly attractive to abusers since the sustained release coating can be destroyed by crushing or grinding the formulation. The crushed material no longer controls the release of drug. Depending on the drug, abusers can then (1) snort the material, (2) swallow the material or (3) dissolve the material in water and subsequently inject it intravenously. The dose of drug contained in the formulation is thus absorbed immediately through the nasal or GI mucosa (for snorting or swallowing, respectively) or is administered systemically in a bolus via the circulatory system (for IV injection). These abuse methods result in the rapid bioavailability of relatively high doses of drug, giving the abuser a "high". Since relatively simple methods (crushing, grinding, chewing and/or dissolution in water)

- 5 -

can be used to transform conventional formulations into an abusable form, they provide virtually no deterrent to a potential abuser.

17.     OxyContin® is supplied in a controlled-release dosage form and is intended to provide up to 12 hours of relief from moderate to severe pain. Even though the formulation for OxyContin® has been changed to implement tablet hardness as an abuse-deterrence mechanism in reformulated OxyContin®, the tablets can still be crushed. When a crushed tablet is swallowed, snorted into the nostrils, or dissolved and subsequently injected intravenously, the controlled-release mechanism is destroyed and a potentially lethal dose of oxycodone becomes bioavailable. Thus, reformulated OxyContin® is still required to carry a black-box warning, which states: "crushing, chewing, or dissolving OxyContin tablets can cause rapid release and absorption of a potentially fatal dose of oxycodone."

18.     The warning specifically states that the tablet must be taken whole and only by mouth.

19.     The problems with abuse and diversion of oxycodone are well documented over many years. Some of these reported cases have been associated with serious consequences including death.

20.     The problems with abuse are significant and longstanding, and efforts to design new abuse-resistant or abuse-deterrent formulations have resulted in availability of a limited number of sustained-release opioid formulations with features to deter abuse. Some formulations have been designed to prevent the injection of compositions meant for oral administration, e.g. the incorporation of an ingestible solid, which causes an increase in viscosity upon exposure to aqueous solutions.

- 6 -

RLF1 20378070v.1

21.     It should be noted that although these compositions preclude abuse by injection, this approach fails to prevent abuse by crushing and swallowing or snorting the formulation.

22.     Other patented approaches have described formulations containing a combination of opioid agonists and antagonists, in which the antagonist does not block the therapeutic effect when the admixture is administered orally, but which does not produce analgesia, euphoria or physical dependence when administered parenterally by an abuser. Some patents describe oral dosage forms including a combination of an orally active opioid agonist and an orally active opioid antagonist in a ratio that, when delivered orally, is analgesically effective but that is aversive in a physically dependent subject. While such a formulation may be successful in deterring abuse, it also has the potential to produce adverse effects in legitimate patients.

23.     It is thus an object of Collegium's Patents to provide a pharmaceutical composition that significantly reduces the potential for improper administration or use of drugs but which, when administered as directed, is capable of delivering a therapeutically effective dose. Abuse-deterrent and tamper-resistant pharmaceutical compositions have been developed to reduce the likelihood of improper administration of drugs, especially drugs such as opioids.

24.     In one, preferred, embodiment, the drug is modified to increase its lipophilicity by forming a salt between the drug and one or more fatty acids or amines, wherein the concentration of the one or more fatty acids or amines is one to fifteen times the molar amount of the active agent, preferably two to ten times the molar amount of the active agent. In one embodiment the modified drug is homogeneously dispersed within microparticles composed of a material that is either slowly soluble or insoluble in water.  The abuse-deterrent composition prevents the immediate release of a substantial portion of drug, even if the physical integrity of the

- 7 -

formulation is compromised (for example, by chopping with a blade or crushing) and the resulting material is placed in water, snorted, or swallowed. However, when administered as directed, the drug is slowly released from the composition as the composition is broken down or dissolved gradually within the GI tract by a combination of enzymatic degradation, surfactant action of bile acids, and mechanical erosion.

25.     Collegium's unique formulation earned it a New Product marketing exclusivity until April 26, 2019 at the time of approval. More recently, on November 6, 2017, the FDA approved Collegium's sNDA, which included three main changes:

- The addition of comparative oral pharmacokinetic data, collected in two completed clinical studies evaluating the effect of physical manipulation by crushing XTAMPZA® ER compared with the abuse-deterrent of OxyContin® (oxycodone hydrochloride extended-release tablets) and a control (oxycodone immediate release (IR));

- Results of an oral human abuse potential study showing statistically lower "Drug Liking" and "Take Drug Again" scores for XTAMPZA® ER by comparison to oxycodone IR); and

- The additional of an oral abuse deterrent claim into the label indicating that XTAMPZA® ER has physiochemical properties that are expected to reduce abuse by the oral route.

26.     With approval of the sNDA, XTAMPZA® ER, an embodiment of the patented Collegium formulations, was the first single-entity oxycodone formulation to be recognized by FDA to have abuse-deterrent properties with respect to all three of the most common routes of abuse- i.e., nasal, IV and oral routes.

- 8 -

27.     Now Teva states its intention to launch a copy of Collegium's XTAMPZA® ER: Teva provided Collegium with a Notice of Patent Certification asserting it intends to launch its copy before Collegium's patents to its superior abuse-deterrent product expire. Teva's Detailed Statement, sent with its Notice of Patent Certification, critically does not even allege non-infringement for a wide swathe of the claims in Collegium's patents. On this basis alone, it is apparent that Teva intends to launch essentially a copy of Collegium's superior XTAMPZA® ER product, with its uniquely effective abuse-deterrent properties.

**TEVA'S ANDA**

28.     Upon information and belief, Teva submitted ANDA No. 209431 to the FDA under § 505(j)(2)(B) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)(2)(B)), seeking approval to engage in the commercial manufacture, use, sale, offer for sale, or importation of the Teva ANDA Products prior to the expiration of the Patents.

29.     Upon information and belief, Teva's ANDA No. 209431 contains a "Paragraph IV" certification under 21 U.S.C. § 355(b)(2)(A)(iv) alleging that the Asserted Patents, which are listed in the FDA's *Orange Book* as covering the drug XTAMPZA® ER, which is the subject of approved NDA No. 208090, is "invalid, unenforceable, and/or will not be infringed by the manufacture, use, or sale of [the Teva ANDA Products]."

30.     In a letter dated October 18, 2018 addressed to Collegium, and received on October 19, 2018, Teva provided "Notice" with respect to the proposed Teva ANDA Products under 21 U.S.C. § 355(j)(2)(B)(ii)-(iv) and 21 C.F.R. § 314.95(c) and/or § 314.95(d).

31.     The Detailed Statement attached to Teva's Notice fails to provide any in-depth analysis concerning allegations of non-infringement of claims of the Asserted Patents. The only reasonable assumption is that Teva intends to launch essentially a copy of Collegium's unique, patented abuse-deterrent oxycodone product.

RLF1 20378070v.1

## CLAIMS FOR RELIEF:

### COUNT I

**(Teva's Filing of the ANDA Constitutes Infringement, and the Sale and Use of the Teva ANDA Products Will Constitute Infringement, of the '598 Patent)**

32.     Collegium incorporates by reference and realleges paragraphs 1-31 above as though fully restated herein.

33.     Teva's submission of its ANDA was an act of infringement of the Asserted Patents under the United States Patent Law, 35 U.S.C. § 271(e)(2)(A).

34.     Upon information and belief, the Teva ANDA Products infringe at least claims 1, 7, and 9-30 of the '598 Patent.

### COUNT II

**(Teva's Filing of the ANDA Constitutes Infringement, and the Sale and Use of the Teva ANDA Products Will Constitute Infringement, of the '729 Patent)**

35.     Collegium incorporates by reference and realleges paragraphs 1-31 above as though fully restated herein.

36.     Teva's submission of its ANDA was an act of infringement of the Asserted Patents under the United States Patent Law, 35 U.S.C. § 271(e)(2)(A).

37.     Upon information and belief, the Teva ANDA Products infringe at least claims 1-16 and 19 of the '729 Patent.

### COUNT III

**(Teva's Filing of the ANDA Constitutes Infringement,
and Teva Will Induce Third Parties to Infringe the Asserted Patents, or Contribute to the
Infringement by Third Parties of the Asserted Patents)**

38.     Collegium incorporates by reference and realleges paragraphs 1-37 above as though fully restated herein.

- 10 -

39.     Teva's submission of its ANDA was an act of infringement of the under the United States Patent Law, 35 U.S.C. § 271(e)(2)(A).

40.     Upon information and belief, Teva's commercial manufacture, use, sale, offer for sale and/or importation of the Teva ANDA Products will infringe, contribute to the infringement of, and/or induce the infringement of one or more claims of the Asserted Patents under 35 U.S.C. §§ 271(a), (b), (c), and (g).

41.     The Teva ANDA Products constitute a material part of the inventions covered by the claims of the Asserted Patents and are not suitable for substantial non-infringing use.

42.     Teva, through at least its labeling, will intentionally induce infringement of the Asserted Patents by at least patients who take the Teva ANDA Products and manufacturers that manufactured the Teva ANDA Products and/or the API therefor, including manufacturers that manufacture the Teva ANDA Products and/or the API therefor jointly.

## PRAYER FOR RELIEF

WHEREFORE, Collegium prays for judgment:

A.     Adjudging that Teva has infringed, and that Teva's commercial sale, offer for sale, use, manufacture, and/or importation of the Teva ANDA Products will infringe, induce infringement of, and/or contribute to the infringement of the Asserted Patents;

B.     Adjudging, pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of Teva's NDA No. 209431, under § 505(j)(2)(B) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)(2)(B)), to be a date not earlier than the date of expiration of the Asserted Patents plus any additional periods of exclusivity;

C.     Preliminarily and permanently enjoining, pursuant to 35 U.S.C. §§ 271(e)(4)(B) and 283 and Rule 65, Fed. R. Civ. P., Teva, its officers, partners, agents, servants, employees,

RLF1 20378070v.1

parents, subsidiaries, divisions, affiliate corporations, other related business entities, and all other persons acting in concert, participation, or in privity with them, and their successors and assigns, from any commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of any drug product that infringes the Asserted Patents;

D.      Declaring this an exceptional case and awarding Collegium its attorneys' fees, as provided by 35 U.S.C. §§ 271(e)(4) and 285; and

E.      Awarding Collegium such other and further relief as this Court may deem just and proper.

OF COUNSEL:

Jake M. Holdreith
Kelsey J. Thorkelson
ROBINS KAPLAN LLP
800 LaSalle Avenue
Suite 2800
Minneapolis, MN 55402
(612) 349-8500

Jeffrey Alan Hovden
Oren D. Langer
ROBINS KAPLAN LLP
399 Park Avenue
Suite 3600
New York, NY 10022
(212) 980-7400

Dated:  November 30, 2018

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff Collegium Pharmaceutical, Inc.*

RLF1 20378070v.1